UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WANDA WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | 06 C 3371 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| BRACH'S CONFECTIONS, INC., and | ) | |
| BRACH & BROCK CONFECTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court are the parties' Motions for Summary Judgment. For the following reasons, both Motions are denied.

## I. BACKGROUND[1]

### A. Facts

Plaintiff Wanda Wells ("Wanda") is the widow of Gathiel Wells ("Gathiel"), a longtime employee of Defendant Brach's Confections, Inc. ("Brach's"), an Illinois corporation. During the time period relevant to this case, Brach's maintained a voluntary benefits plan for its employees (the "Plan"), which included group life insurance coverage. The Plan was administered pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA").

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

Gathiel began working for Brach's in June 1971. During his employment at Brach's, Gathiel purchased group life insurance coverage (the "Policy") under the Plan, and made Wanda the beneficiary of the Policy. The Policy was issued by Liberty Life Assurance Company of Boston ("Liberty"). Gathiel became disabled with terminal lung cancer at some point during his tenure at Brach's. Although the parties do not specify the date on which Gathiel was diagnosed, he went on disability leave on January 26, 2000, and retired from Brach's on August 29, 2000. Gathiel died from lung cancer on June 9, 2001.

Shortly after Gathiel died, Wanda contacted Brach's to notify the company of her husband's death. Brach's and Liberty allegedly informed Wanda that the Policy had terminated upon Gathiel's retirement from Brach's, and that benefits were therefore no longer payable. Brach's asserts that allegations regarding these conversations are supported by inadmissible evidence. Wanda further asserts that the Policy terminated when Gathiel retired because he failed to "convert" his group policy to an individual policy after his retirement. Had Gathiel "converted" his group policy to an individual policy, he would have been required to pay the premiums himself, but, Wanda alleges, he would have been covered under the Policy upon his death. However, Wanda asserts, because Brach's led the Wells to believe that Gathiel was not required to pay the premiums himself, and because Brach's never gave Gathiel a "conversion form" he could use to change his group policy to an individual policy, his coverage lapsed. Brach's admits that the Policy lapsed because Gathiel failed to "convert" it to an individual policy and because he failed to keep up the premiums, and also admits that it cannot produce a copy of any document that would indicate that Brach's notified the Wells that Gathiel needed to "convert" the Policy. Brach's further admits that the provisions of the group plan required

2

Brach's to provide the Wells with notice of their need to "convert" the Policy upon Gathiel's retirement.

Wanda further asserts that prior to Gathiel's retirement, Brach's assured the Wells that (1) the life insurance premiums would be paid by the group plan because Gathiel had become disabled, and (2) it was therefore unnecessary for the Wells to pay these premiums. Brach's admits that the group plan contained a "waiver of premium provision" which provided that if Liberty had received proof of Gathiel's disability, the Policy would have continued without the payment of premiums (as long as certain conditions were met). Brach's, however, asserts that statements regarding any assurances it allegedly made regarding this waiver are inadmissible hearsay. Wanda further asserts that Gathiel's physician completed a form to substantiate Gathiel's disability, and that the Wells filed this form with Liberty. Brach's does not dispute this assertion.

On March 7, 2006, nearly five years after Gathiel died, Wanda filed a claim with Liberty seeking benefits under the Policy. Liberty denied this claim. Brach's asserts that Liberty denied this claim because the waiver of premium provision did not apply to Gathiel, and because the Wells failed to convert the group policy to an individual policy. Wanda admits that the Wells failed to convert the Policy, but asserts that the ultimate reason Liberty denied her claim was that Brach's failed to furnish Wells and Liberty with the necessary information regarding the applicability of the waiver of premium provision and the need for the Wells to convert the Policy.

## B. Procedural History

On June 21, 2006, Wanda filed a one count Complaint against Brach's in the Northern District of Illinois. The Complaint, filed pursuant to ERISA, alleges that Brach's failed to

3

provide Gathiel with information regarding his right to convert the Policy, that Brach's failed to continue the Policy when Gathiel had become completely disabled, that Brach's misled the Wells into believing that the Policy was still in full force after Gathiel had retired and that no premium payments were required to keep the Policy alive, that Brach's breached its fiduciary duties to the Wells, and that Brach's failed to properly administer the Policy. As a direct result of these allegedly wrongful acts and omissions, Wanda alleges, she was unlawfully denied life insurance benefits under the Policy.

Brach's filed its Motion for Summary Judgment on September 29, 2006. Wanda filed her Motion for Summary Judgment on November 1, 2006. These Motions are fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. FED.

R. Civ. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the nonmoving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the nonmoving party's favor must be drawn from specific facts identified in the record that support that party's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003)(citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Standing

The court first examines the threshold issue of whether Wanda has standing to pursue this lawsuit. Brach's asserts that Wanda has no standing to sue under ERISA because she is neither a participant nor a beneficiary of an employee benefit plan. See 29 U.S.C. § 1002 (7-8) (defining a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer," and "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.").

To accept Brach's argument would be to "give an unduly cramped reading to those provisions granting status to certain classes under [ERISA], i.e. participants, beneficiaries, and fiduciaries... ERISA was not designed to protect merely those beneficiaries already receiving benefits, but also 'putative beneficiaries.'" See Sladek v. Bell Sys. Mgmt. Pension Plan, 880 F.2d 972, 976 (7th Cir. 1989) (quoting Smart v. State Farm Ins. Co., 868 F.2d 929, 933 (7th Cir. 1989)). In cases where there is uncertainty as to whether a particular individual is a proper plan beneficiary with standing to sue under ERISA, the Seventh Circuit instructs district courts to treat anyone with an "arguable claim" for benefits as having standing. Riordan v. Commonwealth Edison Co., 128 F.3d 549, 552 (7th Cir. 1997). "To the extent doubt remains, Firestone tells us to treat as a 'participant' for jurisdictional purposes anyone with a colorable claim to benefits .., an approach equally applicable when a person claiming to be a 'beneficiary' files suit." Id. (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989) and Kennedy v. Connecticut General Life Ins. Co., 924 F.2d 698, 700 (7th Cir. 1991)).

In this case, the court finds that Wanda has established at least a "colorable claim" to putative benefits. Pursuant to ERISA § 502(a)(1)(B), "[a] civil action may be brought (1) by a participant or beneficiary (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the court will explain below, one of the genuine issues of material fact in this case is whether the "waiver of premium" clause in the group insurance policy applied to Gathiel after he retired from Brach's. If this waiver did apply, the group insurance policy should have remained in force. If not, then Brach's was obligated under the Plan to inform the Wells of Gathiel's right to convert the Policy. In either event, the

court therefore determines that Wanda has standing to pursue her claims in this case pursuant to ERISA § 502(a)(1)(B).

Moreover, § 502(a)(1)(B) "allows a plan participant [or beneficiary] to bring a civil action 'to enforce his rights under the terms of the plan,' without reference to whether the relief sought is legal or equitable." Caplan v. CNA Short Term Disability Plan, 479 F. Supp. 2d 1108, 1111 (N.D. Cal. 2007) (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 221 (2002)). ERISA beneficiaries may also bring suits under 29 U.S.C. § 1132(a)(3) for "appropriate equitable relief for breach of fiduciary obligations, where ERISA does not 'elsewhere provide [] adequate relief for a beneficiary's injury.'" Caplan, 479 F. Supp. 2d at 1112 (quoting Varity Corp. v. Howe, 516 U.S. 489, 515 (1996)).

## C. Genuine Issues of Material Fact

After examining the record in this case, the court determines that genuine issues of material fact exist which preclude summary judgment for either party. These genuine issues of material fact include the following. (1) Whether Brach's was obligated to give the Wells written notice of their right to convert the Policy. See Def.'s Ex. A to Affidavit, Brach's Confections, Inc. Group Welfare Benefit Plan, at 19 ("Notice must be given to a covered employee or covered dependent spouse of his or her right to convert to an individual policy at least 15 days after the coverage ends."); Pl.'s Ex. G, Converting Your Group Life Insurance ("Employer: As soon as you learn that an employee's employment will cease or that he or she or a dependent will no longer be within an eligible class, complete the section captioned TO BE COMPLETED BY EMPLOYER on the back side of this folder and give it to the employee – *do not wait until termination of the group life insurance coverage!*"). (2) Whether Brach's actually notified the

Wells concerning Gathiel's right of conversion. (3) Whether Brach's provided the Wells with the proper documentation regarding conversion of the Plan. (4) Whether Brach's provided Liberty with any documentation regarding the waiver of premium or conversion. (5) Whether Brach's advised the Wells that Gathiel's Policy was in full force following his retirement. (6) Whether the Plan provided for a waiver of premiums for Gathiel when he retired due to his disability. (7) Whether Gathiel fulfilled the Plan's requirements for any such waiver of premiums.

The court rejects Brach's assertion that Wanda's allegations regarding conversations between the Wells and Brach's regarding coverage under the Policy, the waiver of premiums, and the Well's obligation to pay the premiums and/or convert the Policy, are inadmissible hearsay. The court determines that these statements are admissions by a party-opponent, and are therefore not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(A). See United States v. Tolliver, 454 F.3d 660, 665 (7th Cir. 2006); United States v. Spiller, 261 F.3d 683, 690 (7th Cir. 2001) ("A party's own statements offered against him are considered admissions by a party-opponent, and, as such, are not hearsay and are admissible under FED. R. EVID. 801(d)(2)(A)."). Because these statements are not hearsay, the court may consider them in adjudicating these Motions for Summary Judgment. See Bombard, 92 F.3d at 562. Ultimately, at trial and after hearing Wanda's testimony and considering other relevant evidence, the trier of fact will decide whether the statements attributed to Brach's were made, and what weight to give them, in light of all of the evidence presented in the case.

## III. CONCLUSION

For the foregoing reasons, the Parties' Motions for Summary Judgment are denied. IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: June 14, 2007